UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CAROLINA ACON,
*on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*

    Plaintiff,

        v.

THE LGBT NETWORK,
DAVID KILMNICK, and
ROBERT VITELLI,

    Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

---

Plaintiff, CAROLINA ACON ("Plaintiff"), on behalf of themselves and others similarly situated, by and through their undersigned attorney, files this Class and Collective Action Complaint against Defendants, THE LGBT NETWORK ("Corporate Defendant"), DAVID KILMNICK, and ROBERT VITELLI ("Individual Defendants" and together with Corporate Defendant, "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff ACON alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they and others similarly situated are entitled to recover from defendants: (1) unpaid overtime compensation, (2) liquidated damages, and (3) attorneys' fees and costs.

1

2. Plaintiff ACON further alleges that, pursuant to the New York Labor Law ("NYLL") that they and others similarly situated are entitled to recover from Defendants" (1) unpaid overtime compensation, (2) statutory penalties, (3) unpaid spread of hour payments, (4) liquidated damages, and (5) attorneys' fees and costs.

3. Plaintiff ACON further alleges that they and others similarly situated were deprived of their statutory rights as a result of Defendants unlawful discrimination practices, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), New York City Human Rights Law and the Administrative Code of the City of New York § 8-107 ("NYCHRL"), and brings this action against Defendants to recover: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4. Defendants are subject to personal jurisdiction in this judicial district.

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## PARTIES

9. Plaintiff CAROLINA ACON is a resident of Queens County, New York.

10. Plaintiff CAROLINA ACON is an Asian transgender individual.

11. Defendant LGBT NETWORK is an American for-profit corporation organized under the laws of Florida, with a principal executive office at 3001 Executive Dr Ste 340, St. Petersburg, FL 33762.

12. Individual Defendant DAVID KILMNICK is Chief Executive Officer of LGBT Network.

13. Individual Defendant ROBERT VITELLI is Chief Operating Officer of LGBT Network.

14. Each of the Individual Defendants had control over the terms and conditions of Plaintiffs' employment, and those of similarly situated employees. Specifically, with respect to Plaintiff and other similarly situated employees, Individual Defendants maintained the authority to (1) hire and fire; (2) determine rate and method of pay; (3) adjust employee work schedules; (4) maintain employees' employment records; and (5) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and the Class members. Individual Defendants exercised functional control over the business and financial operations of the Corporate Defendant.

15. Defendants operate the LGBT Network as a single integrated enterprise. Specifically, all locations share common ownership and management, have a common business purpose, engage in interrelated operations, and have centralized control of labor relations. All LGBT Network locations are commonly owned and operated by the Individual Defendants. Defendants maintain centralized human resources and a single payroll system for employees at all locations. Plaintiff ACON and other employees' pay stubs list the LGBT Network as their company.

16. LGBT Network's enterprise includes four (4) currently operating establishments throughout New York City. The various locations are marketed as one common enterprise under the banner of "LGBT Network". Employees of Defendants are required to engage in events and activities together. LGBT Network runs a website, lgbtnetwork.org, which lists the four

organizations as part of the same group, as "Our Organizations". *See* EXHIBIT A, SCREENSHOT OF LGBNETWORK.ORG'S 'OUR ORGANIZATIONS' PAGE.

17. Defendants operate an association of non-profit organizations aimed at the LGBT community. Defendants maintain offices and hire employees throughout the State of New York, including multiple locations in Long Island and a location in Queens.

18. At all relevant times, the Defendants were and continue to be "enterprises engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

19. At all relevant times, Defendants were an employer that employs four (4) or more "employees" within the meaning of the NYSHRL and NYCHRL, and are an "employer" and "person" within the meaning of Section 15(a) of the FLSA and Section 215 of the NYLL.

20. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21. Plaintiff ACON brings claims for relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt employees of Defendants. ("FLSA Collective Plaintiffs").

22. At all relevant times, Plaintiff ACON and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek. The claims of Plaintiff ACON stated herein are essentially the same as those of FLSA Collective Plaintiffs.

23. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

24. Plaintiff ACON brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees of Defendants on or after the date that is six years before the filing of the Complaint in this case defined herein (the "Class Period")

25. All said persons, including Plaintiff ACON, are referred to herein as the "Class" or "Class Members". The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that exact number are based are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass (the "Protected Subclass") including but not limited to nonwhite employees and employees with a non-cis gender

identity, who also number more than forty (40). Protected Subclass Plaintiffs are members of both the Class and the Protected Subclass.

27. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation, failing to provide proper wage statements, failing to provide proper wage and hour notices, failing to pay spread of hours, and discrimination based on race and gender identity. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Further, the Protected Subclass members were subject to the same corporate practice of Defendants for creating a hostile work environment as a result of discrimination. Plaintiff ACON and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

28. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent, with experience in both class action litigation and employment litigation, and previous representation of Plaintiffs in wage and hour cases.

29. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation, where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions would require.

Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. However, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, while treating the claims as a class action would result in significant savings of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in an impairment of Class Members' rights and the disposition of their interests through actions which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

30. Defendants and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not name din the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31. There are questions of law and fact common the Class with predominate over any questions affecting only individual Class Members, including:

   (a) Whether Defendants employed Plaintiff and Class Members within the meaning of the state labor laws;

7

(b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants regarding the types of work and labor for which Defendants did not pay the Class Members properly;

(c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

(d) Whether Defendants properly notified Plaintiff and Class Members of their pay rates;

(e) Whether Defendants paid Plaintiff and Class Members the proper overtime compensation;

(f) Whether Defendants failed to pay Plaintiff proper spread of hours pay;

(g) Whether Defendants provided proper wage statements to Plaintiff and Class Members;

(h) Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members; and

(i) Whether Defendant discriminated against members of the Protected Subclass.

## STATEMENT OF FACTS

32. On or about February 12, 2019, Defendants hired Plaintiff CAROLINA ACON to work as a Youth Services Coordinator in Defendants' "Q Center" office, which was located at 37-18 Northern Blvd, Suite 107, Long Island City, NY 11101.

33. Throughout their employment as a Youth Services Coordinator, Defendants paid Plaintiff ACON $21.63 per hour for forty (40) hours of work per week. However, to meet the requirements of the position, Plaintiff typically had to work one (1) additional hour per day, which resulted in approximately five (5) overtime hours per week. They were not compensated for their overtime hours worked.

34. Plaintiff regularly worked shifts that began and ended over ten hours apart, but was not paid the spread of hours pay required by the New York Labor Law.

35. Plaintiff ACON's role included facilitating events and frequent communications with people outside of their office, including managing and sending mass emails for LGBT Network, sometimes to hundreds of people.

36. Throughout Plaintiff's employment, they were subjected to a hostile work environment due to discrimination from Defendant as a result of Plaintiff's non cis gender identity and nonwhite race.

37. As an example, but not the only example, of the discriminatory workplace environment, Plaintiff ACON was repeatedly sexually harassed at a work site, and reported this harassment to Director of Programs, J.R. Cehonski, requesting reassignment out of that work site.

38. Plaintiff's request was ignored, and the harassment increased, until the harasser put Plaintiff ACON into the threat of imminent physical harm, at which point the harasser was banned from the site.

39. As another example, but not the only example, of the discriminatory workplace environment, Plaintiff ACON was hired under a grant, the proposal for which specified that four employees would be hired, including a Youth Services Coordinator, a Youth Services Manager, and two (2) Community Educators. To Plaintiff ACON's knowledge, the terms of this grant were never changed, but throughout Plaintiff's employment, a second Community Educator was never hired with the grant funds by Defendants, nor were interviews conducted to attempt to fill the role. Instead, Defendants instructed Plaintiff ACON to fulfill the duties of both positions.

40. On or about October 29, 2019, Plaintiff ACON was instructed, as usual, to underreport their hours worked. Plaintiff ACON refused.

41. Plaintiff ACON was threatened by the Director of Programs, J.R Cehonski, and told that if Plaintiff reported more than 40 hours of work, Plaintiff would be formally written up for it. Plaintiff ACON was extremely distressed by this conversation.

42. On or about October 31, 2019, Plaintiff ACON met with J.R. Cehonski and Talia Beaulie-Hain, Plaintiff's immediate supervisor, in an effort to avoid having to submit a resignation letter. Plaintiff was told that they would hear from H.R.

43. On or about November 1, 2019, Plaintiff ACON was informed by Defendant ROBERT VITELLI that their employment had been terminated, effective immediately, and instructed to leave the premises.

44. Plaintiff ACON was terminated due to Plaintiff's refusal to misreport their hours, as well as to animus on the part of Defendants due to discrimination based on Plaintiff's non cis gender identity and nonwhite race.

45. Based on Plaintiff ACON's observations and conversations with other non-cisgendered, nonwhite employees, Protected Subclass members were all subject to the same hostile work environment as Plaintiff ACON.

46. Throughout their employment with Defendants, Plaintiff ACON regularly worked more than forty (40) hours per week. Due to company pressure, and because it was not possible to meet the required duties during the scheduled hours, they had no choice but to work additional hours. Although they were working overtime, Plaintiff's managers repeatedly advised them not to record the overtime hours on their time sheet. Similarly, FLSA Collective Plaintiffs and Class Members regularly were required to work over forty (40) hours per week to meet their required duties, and Defendants similarly failed to pay them proper overtime compensation.

47. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA, or the state overtime rate (of time and a half) to Plaintiff, FLSA Collective Plaintiffs and Class Members for all hours worked in excess of forty (40) hours per week by forcing them to misreport their hours.

48. Defendants knowingly and willfully operated their business with a policy of not paying proper spread of hours to Plaintiff and Class Members, in accordance with the New York Labor Law.

49. Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notices or wage statements to Plaintiff, FLSA Collective Plaintiffs, and Class Members that meet the requirements of New York Labor Law § 195(1) or New York Labor Law § 195(3), including the requirement of listing the accurate rates of pay and regular and overtime hours worked per week.

50. Plaintiff retained Igbokwe PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

51. Plaintiff realleges all paragraphs above as if fully set forth herein.

52. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a)

53. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

54. At all relevant times, Defendants had gross annual revenues in excess of $500,000.

55. At all relevant times, Defendant has a policy and practice of failing to pay overtime compensation at the statutory rate of time and one half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

56. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff and FLSA Collective Plaintiffs the statutory overtime premium of time and one half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known the payment was due.

57. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

58. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

59. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation, plus an equal amount as liquidated damages.

60. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs, and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of the Court to amend this Complaint to set forth the precise amount due.

61. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

62. Plaintiff realleges all paragraphs above as if fully set forth herein.

63. At all relevant times, Plaintiff and Class Members were employed by Defendant within the meaning of the New York Labor Law §§ 2 and 651.

64. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

65. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them the proper spread of hours pay as required by New York Labor Law.

66. Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff and Class Members, as required by New York Labor Law § 195(1).

67. Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members with every wage payment, as required by New York Labor Law § 195(3).

68. Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

69. Plaintiff realleges all paragraphs above as if fully set forth herein.

70. Plaintiff and protected subclass members are employees and qualified persons within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

71. Defendants violated Plaintiff and protected subclass members' statutorily protected rights under the NYSHRL, New York Executive Law § 296, by subjecting Plaintiff and protected subclass members to a hostile work environment as a result of their race or gender identity.

72. Defendants violated Plaintiff ACON's rights by terminating their employment in retaliation of Plaintiff's refusal to misreport their hours.

73. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff and protected subclass members' protected rights under the NYSHRL.

74. As a result of Defendants' unlawful employment practices, Plaintiff ACON and the protected subclass members' sustained injury, including economic damages, the past and future physical and emotional distress, and the costs of bringing this action.

75. Due to Defendants' violation under the NYSHRL, due to discrimination on the basis of race and gender identity, Plaintiff and Protected Subclass Members are entitled to recover from Defendants: (1) an injunction ordering Defendant to cease its discriminatory practices as described herein; (2) back pay; (3); front pay; (4) compensatory damages; and (5) punitive damages.

## COUNT IV

### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

76. Plaintiff realleges all paragraphs above as if fully set forth herein.

77. Plaintiff ACON and Protected Subclass Members are employees and qualified persons within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

78. Defendants violated Plaintiff ACON and Protected Subclass Members' statutorily protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by subjective Plaintiff ACON and Protected Subclass Members to a hostile work environment.

79. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff ACON and Protected Subclass Members' protected rights under the NYCHRL.

80. As a result of Defendants' unlawful employment practices, Plaintiff ACON and Protected Subclass Members sustained injury, including economic damages, the past and future physical and emotional distress, and the costs of bringing this action.

81. Defendants violated Plaintiff ACON's rights by terminating their employment in retaliation of Plaintiff's refusal to misreport their hours.

82. Due to Defendants' violation under the NYCHRL due to discrimination on the basis of race and gender identity, Plaintiff ACON and Protected Subclass Members are entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees and costs.

WHEREFORE, Plaintiff, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful and violate the FLSA and applicable state wage and hour laws;

b. A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL and NYCHRL;

c. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d. An award of unpaid overtime compensation due under the FLSA and the applicable state laws;

e. An award of statutory penalties as a result of Defendants' failure to comply with the wage notice and wage statements requirements under the applicable state laws;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, pursuant to the FLSA and/or the applicable state laws;

g. An order awarding relief for Defendants' discriminatory conduct, including but not limited to back pay, front pay, compensatory, and punitive damages;

h. An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

j. Designation of this action as a class action pursuant to F.R.C.P. 23;

k. Designation of Plaintiff as Representative of the Class; and

l. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 18, 2021　　　　　　　　　　　　　　Respectfully Submitted,

By: ___/s/ William Igbokwe_____
O. Williams Igbokwe (5170683)
Law Office of William Igbokwe
28 Liberty Street, 6th Floor
New York, NY 10005
Phone: (347) 467-4674

Fax: (347) 467-6367
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

Fax: (347) 467-6367
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*